# United States District Court
# Northern District of Indiana
# Hammond Division

REBECCA HOYT FISCHER,
Bankruptcy Trustee,

        Plaintiff,

        v.

MITTAL STEEL USA INC a/k/a
ARCELOR MITTAL STEEL USA INC.,

        Defendant.

_____

MITTAL STEEL USA INC a/k/a
ARCELOR MITTAL STEEL USA INC.,

        Third Party Plaintiff

        v.

HARTFORD INSURANCE COMPANY,

        Third Party Defendant

Civil Action No. 2:07-CV-241 JVB

## OPINION AND ORDER

This matter is before the Court on cross motions for summary judgment filed by Third Party Plaintiff Mittal Steel USA Inc. (DE 95) and Third Party Defendant Hartford Insurance Company (DE 107). The Court held oral argument on March 16, 2012.

## A.    Background

Christopher Molnar, the original plaintiff in this action,[1] was an employee of Pekron

_____

[1] On January 31, 2012, Rebecca Hoyt Fischer, Bankruptcy Trustee, was substituted as party plaintiff for Mr. Molnar.

Consulting Inc.[2]  He was working at the Mittal facility in East Chicago, Indiana, on July 6, 2005, when, according to the complaint, the floor beneath him gave way and he was injured.  He sued Mittal in Lake County Superior Court, alleging that he was Mittal's invitee at the time of the accident and that its negligence caused his injuries.  Mittal removed the action to federal court on the basis of the parties' diversity of citizenship.

Mittal filed a third party complaint against Hartford Insurance Company, contending that it is an additional insured under an insurance policy issued by Hartford to Pekron.  Mittal tendered the defense of this action to Hartford, but Hartford has not undertaken the defense. Mittal demands judgment against Hartford determining that Hartford owes Mittal a defense and indemnity in Molnar's suit, among other things.

**B.     Choice of Law**

In deciding what law should apply in a diversity case, a federal district court must apply the choice of law rules of the state in which it sits. *Am. EuroJean v. Dugan,* 20 F.3d 255, 260–261 (7th Cir. 1994).  However, when neither party raises a conflict of law issue in a diversity case, a federal court applies the law of the state in which the court sits.  *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991). In their memoranda neither party specifically addresses the issue of what state's law applies to this action. However, at oral argument both parties agreed that the law of Indiana applies.

---

[2]Third Party Defendant Pekron was known as Keter Consultants Inc. when some of the events in this case occurred. Mittal was known as ISPAT Inland.  However, for the sake of clarity, the Court will use the names Pekron and Mittal throughout.

**C.    Summary Judgment Standard**

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir.1996).  Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact.  *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003).  Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial.  *Id.*at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, In*s., 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp*., 154 F.3d 685, 692 (7th Cir. 1998)). Mindful of these standards, the court now turns to the factual basis for the parties' motions and then to their substance.

**D.    Facts**

The facts assumed to be true for the purpose of the motions for summary judgment are as follows:

Third Party Defendant Pekron was performing work at Mittal's East Chicago facility when its employee, Plaintiff, Christopher Molnar, was injured on July 6, 2005.  Purchase Order No. 1-R-2200, dated January 1, 2001, governed Pekron's work for Mittal.  Section 11 in a list of conditions of purchase accompanying the purchase order required that certificates of insurance

be filed with Mittal before commencement of work:

> INSURANCE: Certificates of insurance must be filed with the Purchaser prior to commencement of work and/or entry onto Purchaser's premises. Certificates must be on file with Risk Management, Mail Code 8-218. Please state the Purchaser's Purchase Order number on your certificate.

(Ex. E to Mittal's Cross-mot. Summ. J., DE 110-3 at 6.)

According to the affidavit of Rakesh Shah, Mittal provided Pekron with another list of conditions of purchase sometime in 2005. The record is silent as to whether the 2005 list was intended to amend the 2001 purchase order. Section 11 of the 2005 list states:

> At Purchaser's request, Seller agrees to furnish acceptable certificates of insurance evidencing workman's compensation and employer's liability coverage and comprehensive general liability coverage, including both products and contractual liability coverage and comprehensive general liability coverage.

(Ex. E to Mittal's Cross-mot. Summ. J., DE 110-4 at 28.)

On the date of Plaintiff's injury, Hartford had an insurance policy in effect in which Pekron was the named insured, Policy No. 83 SBA ER0971. The policy did not include any endorsement stating that Mittal was an additional insured under the policy. Paragraph C(2)(f) of the business liability coverage form of the policy (hereinafter referred to as subparagraph f) defined "Insured" to include:

> **f.** **Additional Insureds by Contract, Agreement or Permit**
> Any person or organization with whom you agreed, because of a written contract or agreement or permit, to provide insurance such as is afforded under this Business Liability Coverage Form.

(Policy No. 83 SBA ER0971, Business Liability Coverage Form at 10, Tab 1 to Hartford's App. to Mot. Summ. J., DE 97-2 at 4.)

Policy No. 83 SBA ER0971 was an agency-serviced policy. This means, among other things, that the agency, rather than Hartford, responds to requests for certificates of insurance. A

certificate of insurance dated December 15, 2005, five months after the accident, and produced

by HRH of Illinois, shows Pekron as the insured, and lists general liability policy No. 83 SBA

ER0971 with effective dates from February 17, 2005, through February 17, 2006. The certificate

names Mittal as the certificate holder.[3] The words "Certificate holder is additional insured

insofar as the general liability coverage" were typed into a box labeled "DESCRIPTION OF

OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY

ENDORSEMENT/SPECIAL PROVISIONS" on the preprinted certificate. (Ex. A9 to Mittal's

Cross-mot. Summ. J., DE 108-10 at 1.) The front page of the certificate contains a coverage

disclaimer:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY
> AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS
> CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE
> AFFORDED BY THE POLICIES BELOW.

*Id.*

The certificate includes the following language on its reverse side:

> IMPORTANT

> If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be
> endorsed. A statement on this certificate does not confer rights to the certificate
> holder in lieu of such endorsement(s).

> DISCLAIMER

> The Certificate of Insurance on the reverse side of this form does not constitute a
> contract between the issuing insurer(s), authorized representative or producer, and
> the certificate holder, nor does it affirmatively or negatively amend, extend or
> alter the coverage afforded by the policies listed thereon.

*Id.* at 2.

---

[3]A certificate that is identical except that it bears the date of December 16, 2005, is attached to Mittal's
third party complaint as Exhibit D.

Hartford received a copy of the certificate of insurance ("COI") issued to Mittal. When it receives a COI from an agent in the case of an agency-serviced policy, Hartford employees do not check the accuracy of the information on the document. It is Hartford's expectation that the agent servicing the policy knows what the policy coverage is and will issue accurate COIs.

On September 27, 2004, Hartford sent a letter to HRH regarding a request for an additional insured endorsement to Pekron's policy.[4] The letter (from the Policy Change Team) is addressed to HRH and refers to the Pekron policy at issue:

> The attached Additional Insured Endorsement request was just received in our office without an explanation of why the endorsement is needed.
>
> The Hartford's Commercial General Liability Coverage Form provides automatic coverage for additional insureds, subject to specific exclusions. To determine if the request is covered automatically, refer to the section for "WHO IS INSURED."
>
> If your client's need for additional insured protection is covered by the above explanation, we will not be issuing an endorsement to the policy. If necessary, you may issue a Certificate of Insurance to the requested party as evidence of coverage in lieu of the endorsement.
>
> If the additional insured request is due to an <u>oral</u> agreement, please let us know.
>
> If you still feel the requested endorsement is beyond the scope of our coverage and should be added to the policy, please advise us of the particulars.

(Es. A4 to Mittal' Cross-mot Summ. J., at 10, DE 108-5 at 10.)

The record also includes a letter from Hartford Underwriters Insurance Company employee Ghanshaym Persaud, to Hartford Insurance Group, asking when Hartford Underwriters could expect payment of its subrogation claim. The letter identifies Mittal as Hartford Insurance Group's insured but does not refer to a policy number. Persaud explained in

---

[4]The letter does not state who the proposed additional insured is. Mittal has not, however, claimed that the letter referred to it.

an affidavit that he was seeking subrogation for workers compensation payments Hartford made to Molnar arising from the July 6, 2005, accident. In his affidavit he stated it was his belief at the time he wrote the letter that Mittal was the insured under a policy Hartford issued directly to Mittal. He further stated it was not his belief that Mittal was an additional insured under Pekron's policy.

**E.     Summary of Arguments**

Hartford maintains that the purchase order that constituted the contract between Pekron and Mittal did not require Pekron to make Mittal an additional insured on its insurance policy with Hartford, so that Pekron did not become an insured under the policy by virtue of subparagraph f. Nor was Mittal named in an endorsement as an additional insured. Moreover, according to the disclaimer language on the COI, the certificate did not make Mittal an additional insured; only an endorsement to the policy could do that.

Mittal claims that Hartford's own practice is to allow its agents, such as HRH of Illinois, to extend coverage to a party as an additional insured by issuing a certificate of insurance naming the party an additional insured. Mittal maintains that is what occurred in this instance. Mittal also asserts that the purchase order did require Pekron to make Mittal an additional insured, so that no endorsement was necessary: by virtue of the policy language, then, Mittal became an "automatic" additional insured.

**F.     Analysis**

**(1)     *The Purchase Order Did Not Make Mittal an "Automatic" Insured.***

Hartford is correct that the purchase order that formed the contract between Pekron and

Mittal with respect to this case does not require that Pekron provide insurance coverage for Mittal.[5] Section 11 of the conditions of purchase in the 2001 purchase order merely directs Pekron to supply certificates of insurance, but says nothing about who the insureds should be. Mittal relies on a different set of conditions of purchase that, according to the affidavit of its employee Rakesh Shah, were given to Pekron in 2005, to support its contention that the contract between Pekron and Mittal required Pekron to provided insurance under which Mittal was an insured. (See Ex. E to Mittal's Cross-mot. Summ. J., DE 110-4 at 28.) Mittal fails to explain how the 2005 conditions of purchase became part of the contract between Mittal and Pekron or when they became effective. Moreover, section 11 of the 2005 conditions of purchase does not identify who must be the insureds under the policies it requires. Paragraph 11 of the 2005 conditions of purchase cannot be considered a contractual obligation by Pekron to provide insurance for Mittal. Because there was no written contract between Pekron and Mittal that required Pekron to provide Mittal with general liability insurance, Mittal was not an automatic insured under subparagraph f of the policy. Therefore Hartford is entitled to summary judgment on this issue.

**(2)**     *The Certificate of Insurance*

There are disputed issues of material fact and disputes as to the reasonable inferences to be drawn from undisputed facts as to whether the COI dated December 15, 2005, made Mittal an additional insured under Hartford's policy with Pekron and, if so, whether it was an additional insured on the date of Molnar's injury. Accordingly, summary judgment is inappropriate on

---

[5]In its opinion and order of March 1, 2010 (DE 65), the Court found that"[n]o reasonable fact finder could conclude on the basis of the evidence before the Court that Pekron had a duty to provide Mittal Steel with insurance coverage."

these issues.

**G.**     **Conclusion**

The Court GRANTS Third Party Defendant Hartford's motion for summary judgment (DE 95) in part and DENIES it in part.  The Court DENIES Third Party Plaintiff Mittal's motion for summary judgment (DE 107).

SO ORDERED on March 29, 2012.

<u>s/ Joseph S. Van Bokkelen</u>
Joseph S. Van Bokkelen
United States District Judge